## Shields, Appellant, *v.* Philadelphia.

Argued November 29, 1961. Before BELL, C. J., JONES, COHEN, EAGEN and ALPERN, JJ.

reargument refused January 16, 1962.

*Frank Rogers Donahue, Jr.,* with him *Francis Shunk Brown, 3rd,* for appellants.

*James L. Stern,* Deputy City Solicitor, with him *Ellis A. Horwitz* and *Matthew W. Bullock, Jr.,* Assistant City Solicitors, *Joseph V. Furlong, Jr.,* Deputy City Solicitor, and *David Berger,* City Solicitor, for City of Philadelphia, appellee.

*William C. Ferguson, Jr.,* for Germantown Boys' Club, appellee.

Opinion by Mr. Justice Cohen, January 2, 1962:

Anna Hazen died in 1936. Her last will and testament offered a certain piece of real estate to the City of Philadelphia (City) "for a public park, on condition that no buildings shall be erected thereon other than those required for the comfort of the people, and also that the garden and trees shall be preserved as far as possible. . . ." The City accepted the land, now known as Howell Park, and the deed was duly recorded.

Numerous surveys and studies had been made by the City to determine the best use to which the park could be devoted. Its small size, inaccessability and remoteness detracted from its development as a garden type park. In 1961, after further study and consultation with the residents in the area, the City concluded that the playing of Little League baseball was the best and most effective use which could be made of the area and that no other use for public park purposes was practical. The City then appropriated a sum of money for the construction of a Little League baseball field at Howell Park.

Appellants, residents of the immediate vicinity, brought a bill in equity as taxpayers seeking an injunction against the City, the Department of Recreation and the Germantown Boys' Club which was to supervise the proposed field praying that the proposed use be restrained. The chancellor dismissed the plaintiff's bill. The court en banc dismissed appellants' exceptions and entered a final decree in favor of the defendants.

Although there is some question in our minds as to whether the appellants have standing to bring this taxpayers' suit attacking the use by the City of the property in question, and to seek enforcement of the provisions of the Howell will, we shall not decide the appeal on either of these bases since our court, by the present procedure, has previously entertained appeals

raising similar questions. *Bernstein v. Pittsburgh,* 366 Pa. 200, 77 A. 2d 452 (1951).

The sole question before us, therefore, is whether a Little League baseball field is a legal use of the land dedicated to the City by Miss Howell's will. We hold that it is.

It has been oft-repeated by our cases that a public park is a tract of ground kept more or less in its natural state, embellished by the planting of additional trees and flowers, and devoted to the purposes of pleasure, recreation and amusement. *Bernstein v. Pittsburgh,* supra at 206. Public parks have been recognized as the natural places for diversified athletic facilities. As we stated in *Bernstein,* supra, at 208: " 'It is common knowledge that municipalities maintain public golf courses in their parks just as they maintain baseball diamonds, tennis courts, and playgrounds equipped with appropriate devices. . . .' " The fact that the proposed improvements will primarily benefit Little League baseball does not detract from the public nature of the use. It is not essential that the entire community, or even any considerable portion of it, should directly enjoy or participate in an improvement in order to make it a public one. *Dornan v. Philadelphia Housing Authority,* 331 Pa. 209, 222, 200 Atl. 834 (1938).

Under the City's proposed plan, over half of the area will remain grass and trees. Indeed, the City intends to so improve the property that more public use will be made of the garden type park facilities not used as a baseball field. This is in full compliance with the testatrix's expressed wish in her will that the garden and trees shall be preserved "as far as possible."

We hold, therefore, that the lower court properly dismissed appellants' bill in equity.

Decree affirmed at appellants' cost.

604

Dissenting Opinion by Mr. Chief Justice Bell:

Anna Hazen died in 1936. Her last will offered to the City of Philadelphia a certain piece of real estate comprising 1-1/3 acres, *"for a public park,* on condition that no buildings shall be erected thereon other than those required for the comfort of the people, and also that the garden and trees shall be preserved as far as possible. . . ." The City accepted the land, now known as Howell Park, and the deed was duly recorded.

The City, in violation of the clear language of the trust, now seeks to use the park for a Little League Baseball field which would comprise (not counting foul balls) approximately 2/3rds of the entire tract. It is likely, indeed it is almost a certainty—and certainly there is nothing in the majority opinion to prevent it— that larger and older boys will soon be using the grounds for baseball and other sports and the entire park will be effectively taken over for recreational games or uses, and the donor's "public park" will be abandoned or obliterated.

Moreover, there are 15 trees on this park land and of these 15, the City proposes to cut down and remove the 4 largest trees. Furthermore, the evidence showed that a number of industrial plants have moved into the neighborhood of this park, which would obviously offer the workers, as well as nearby residents, a place where they could enjoy rest, comfort and relaxation, as well as the beauty of this park. A public park is almost as different from a recreation playground as day is from night, even though, in the large parks, such as Fairmount Park, a tiny part of it is set apart for football or baseball or tennis courts or swimming pools. This is very different from turning almost an entire park into a recreation sports center. It is common knowledge that the City of Philadelphia has been derelict in providing recreation areas and recreation facilities for its youth, but this does not justify it in

taking property which is devoted to a trust use and diverting it to a different use which the City leaders deem more utilitarian: McQuillin on Municipal Corporations, Vol. 10, §28.52; *Nichols v. Commissioners of Middlesex County* (Supreme Judicial Court of Massachusetts), 166 N.E. 2d 911. A worthy objective—which little league baseball certainly is—does not justify a destruction of a trust or a diversion of the trust property or trust purpose, any more than it justifies ignoring or distorting or rewriting the Constitution.

What benefactor will wish to leave his property in trust for a worthy purpose when he knows that it can be diverted at the whim of a City official to a use and purpose other than that for which he devised it?