Local 1400, Chester City Fire Fighters Association et al., Appellants *v.* John H. Nacrelli, Mayor of Chester, Pennsylvania, et al., Appellees.

Argued April 6, 1977, before President Judge BOWMAN and Judges CRUMLISH, JR., KRAMER, WILKINSON, JR., MENCER, ROGERS and BLATT.

*Louis H. Wilderman,* with him *Meranze, Katz, Spear & Wilderman,* for appellants.

*Louis J. Sinatra,* with him *Melvin G. Levy,* and, of counsel, *Levy and Levy,* for appellees.

OPINION BY JUDGE BLATT, May 19, 1977:

The Chester City Fire Fighters Association (Local 1400) brings this appeal from an order of the Court of Common Pleas of Delaware County which dismissed its complaint in mandamus.

An arbitration panel had been convened in 1971 after collective bargaining between Local 1400 and the City had reached an impasse, and, included in the December 9, 1971 arbitration award was a mandate that a pension plan be created for all members of the bar-

gaining unit. The award further provided that for purposes of seniority "each member of the bargaining unit shall be deemed to have been employed by the City of Chester on the date of his last hire by a Chester fire company or by the City of Chester, whichever is earlier."

Attempting to comply with the award, the City adopted Ordinance No. 79, creating a paid firemen's pension fund, but it refused to include any provision therein for past service credits prior to January 1, 1972, the date on which certain firemen who had previously been paid by volunteer fire companies became city employes. Local 1400 brought an action in mandamus to compel the City to modify the ordinance so as to include service credits for the period between the date of hire by a volunteer fire company and January 1, 1972, and, when preliminary objections to this complaint were sustained by the Court of Common Pleas of Delaware County, Local 1400 appealed to this Court from the dismissal of its complaint. We then held that the lower court had erred in sustaining the preliminary objections and remanded the case for further proceedings to determine whether or not the firemen paid by the volunteer fire companies to drive fire equipment were, in fact, employes of the City prior to January 1, 1972.[1] After hearing evidence on this issue, the lower court concluded that the paid drivers were not employes of the City during the period in question, and it therefore dismissed the complaint. Local 1400 filed exceptions to the decision which were also dismissed and it has now asked us to review the lower court's decision.

In an action in mandamus, our scope of review is to determine whether or not the lower court abused its discretion or committed an error of law and wheth-

---

[1] *Local 1400, Chester City Fire Fighters Ass'n. v. Nacrelli*, 15 Pa. Commonwealth Ct. 590, 329 A.2d 532 (1974).

er or not sufficient evidence supports the lower court's findings. *Venneri v. County of Allegheny*, 12 Pa. Commonwealth Ct. 517, 316 A.2d 120 (1974). The lower court found here, and the record clearly establishes, that the paid drivers for the volunteer companies were hired and fired by those companies and that each company, not the City, determined the terms or conditions of the drivers' employment. Although the City made lump sum appropriations to the fire companies, it exercised no control or supervision over the internal operations of the companies nor did it control the portion of the appropriation used for salaries of the paid drivers. Having so found, and with clearly sufficient evidence before it on which to base its findings, the lower court also found that, prior to January 1, 1972, the paid drivers were employes of the individual volunteer fire companies and were not employes of the City.

Local 1400 argues that, even if the paid firemen were not City employees prior to January 1, 1972, the inclusion of past service credits for periods of time when they were not employed by the City violates no provision of The Third Class City Code (Code), Act of June 23, 1931, P.L. 932, *as amended*, 53 P.S. §35101 et seq., and that the arbitration award, therefore, is valid and should be fully implemented. As a third class city, of course, the City of Chester has only those powers expressly given it by the Legislature, and one who seeks to compel a third class city to take some action must, therefore, demonstrate that the Code gives that city the power to take such action. *Washington Arbitration Case*, 436 Pa. 168, 259 A.2d 437 (1969).

The sections of the Code dealing with the operation of a pension fund for firemen, 53 P.S. §§39320-39327, provide for service credits *only* for time spent in military service up to a maximum of five years and *only*

if a contributor makes payment for the credit requested, Section 4321 providing as follows:

> With the approval of council, all members of the firemen's pension fund who are contributors and who served in the armed forces of the United States subsequent to September 1, 1940, and who were not members of the firemen's pension fund prior to such military service, shall be entitled to have full credit for each year or fraction thereof, not to exceed five years of such service upon their payment to the firemen's pension fund of an amount equal to that which they would have paid had they been members during the period for which they desire credit, and their payment to such fund of an additional amount as the equivalent of the contributions of the city plus any interest the city would have been required to pay on the contributions on account of such military service.

53 P.S. §39321.

Moreover, the section which is concerned with eligibility for service increments specifically requires employment by the city including credit for military service:

> Service increment shall be the sum obtained by computing the number of whole years after having served the minimum required by this act *during which a contributor has been employed by such city and paid out of the city treasury, including credit for military service* . . . and multiplying the said number of years so computed by an amount equal to one-fortieth of the retirement allowance which has become payable to such contributor in accordance with the provisions of this act. (Emphasis added.)

53 P.S. §39322(b)(1).

We believe that if the legislature had intended to authorize or permit a third class city to provide credit for periods of non-employment other than military time that a provision for the purchase of such time would have been included in the Code. Furthermore, if the City had elected to provide an annuity contract for the firemen's pension rather than to establish a fund by ordinance,[2] the Code would have allowed the City to have entered only into a contract insuring "its elected or appointed officers, officials and *employes, or any class or classes thereof, or their dependents. . . .*" 53 P.S. §37403-53 (emphasis added). In accordance with this section, the City could not have entered into a contract for the pension of a non-employe, and it is reasonable to conclude therefore that periods of non-employment could not be counted in determining eligibility for such a pension.[3]

Local 1400 is unable to cite any authority in the Code which would permit the recognition of service credits for a period of time when the firemen here concerned were not City employes, and it is clear that an arbitration award may require a city to do only that which it could do voluntarily, *Washington Arbitration Case, supra.* We agree with the lower court, therefore, that the City's limited powers do not include authority to grant the requested service credit, and the order of that court dismissing Local 1400's complaint in mandamus is affirmed.

---

[2] 53 P.S. §39320 provides that "cities shall provide annuity contracts or establish, by ordinance, a firemen's pension fund . . . ."

[3] Prior to the addition of the words "or their dependents" in 1970, this provision was held to prohibit a third class city from providing hospitalization insurance to the families of municipal employes even though the Code did not specifically state that such benefits could *not* be provided. *See Washington Arbitration Case, supra.*

248

### ORDER

AND Now, this 19th day of May, 1977, the order of the Court of Common Pleas of Delaware County is hereby affirmed.