Steffy, Appellant, *v.* Reading et al.

540

Argued January 7, 1946. Before MAXEY, C. J., DREW, LINN, STERN, PATTERSON and STEARNE, JJ.

*Benj. R. Simons,* with him *Syme & Simons* and *Robert Grey Bushong,* for appellant.

*Geo. B. Balmer,* with him *Earle I. Koch* and *John P. Wanner,* City Solicitor, for appellees.

OPINION BY MR. JUSTICE HORACE STERN, March 25, 1946:

The first question here presented is one of law: If a paid driver in a volunteer company which constitutes part of the fire department of a third class city is not a city employe is he nevertheless entitled to the civil service protection provided by the Act of May 31, 1933, P. L. 1108? The second is a question of fact: Was plaintiff an employe of the City of Reading or only of the volunteer fire company whose apparatus he drove?

Plaintiff served as a paid fireman from May 11, 1923 to July 6, 1943, attached to the "Oakbrook Fire Company" in Reading. He was originally appointed by the trustees of that company, and, on the latter date, was discharged by them without any charges being preferred

against him and without any trial or hearing. He thereupon instituted proceedings for a writ of mandamus against the Mayor, the City Council and the Civil Service Board of the city, to compel his reinstatement. He relies upon the Act of May 31, 1933, P. L. 1108, which provides for the appointment, promotion, reduction, removal and reinstatement of paid officers, firemen and employes of fire departments in cities of the second and third class; [1] from the date of its enactment no person was to be either appointed or discharged as a paid member of any fire department in such cities in any manner other than as prescribed in the act. In *Lehman v. Hazelton,* 135 Pa. Superior Ct. 410, 5 A. 2d 646, it was held that this act related to volunteer as well as to paid fire departments, and that therefore paid fire drivers in volunteer companies are entitled to its benefits; in that case, however, the driver was admittedly a municipal employe. The present question is whether a paid driver of a volunteer company is within the civil service protection of the statute *if he is not on the payroll of the municipality.* We do not find in the act any indication of an intention on the part of the legislature to provide civil service benefits for any firemen except those in the employ of the city. If it were held that a non-municipal employe is protected by the act against an arbitrary discharge it would necessarily follow that he comes under the statute also in regard to the method of his appointment and it is scarcely conceivable that the act contemplates the appointment by city officials of the employes of volunteer companies. Section 16 provides that "All paid firemen . . . *in the employ of any city* upon the effective date of this act, shall continue to hold their positions subject to the provisions of this act." This provision—and it is the one upon which plaintiff necessarily relies—is an indication that the statute has only municipal employes in contemplation.

---

[1] By the Act of June 27, 1939, P. L. 1207, sec. 9, the Act of May 31, 1933, P. L. 1108, was repealed in so far as its applies to cities of the second class.

As to the second question, it is clear that plaintiff was never in fact an employe of the City of Reading. He was not appointed by the City Council; his position was not established by any councilmanic ordinance; he was not paid by the city nor discharged by it. Only the City Council has the power to appoint and dismiss city employes and prescribe their number, duties and compensation: Third Class City Law of 1931, P. L. 932, §§901, 902. It is true that there are fourteen volunteer companies, of which Oakbrook Fire Company is one, which are recognized by the City of Reading as constituting its fire department; it is also true that the city owns and keeps in repair all the fire apparatus, that it owns or leases all the fire stations, and that it makes annual appropriations to the volunteer companies by way of gratuities to cover their expenses of operation including the payment of their salaried employes. But none of these facts establishes a relationship of employer and employe between the city and the paid drivers of the volunteer companies. The members and employes of such companies are not subject to the control of any city official except that when an actual fire occurs they must, of course, obey the directions of the Fire Chief; even if they fail in that respect, however, they can be discharged only by the trustees of the company to which they belong or by which they are employed. The companies are supervised and managed, not by the city, but by their own trustees, and although the practice is to have applicants for positions examined by a board of which some of the members are city officials this is purely a voluntary system; the examining board is selected by the representatives of the companies and the trustees make the actual appointments without being bound in any way by the results of such examinations. While, in the Act of June 21, 1939, P. L. 566, which amends the Workmen's Compensation Act, all members of volunteer fire companies of the various cities, boroughs, incorporated towns, and townships are declared to be "em-

ployes" of such cities, boroughs, incorporated towns and townships for all the purposes of *that act,* and entitled to receive compensation for injuries received while actually engaged as firemen or while going to or returning from a fire, that "declaration" has no bearing upon the Act of 1933; on the contrary, the inference is clear that without such an express provision the members of volunteer companies would not, merely by reason of such membership, be regarded as municipal employes entitled to receive workmen's compensation. The same observation applies to the Acts of June 22, 1931, P. L. 751, and June 29, 1937, P. L. 2329, amending section 619 of the Vehicle Code, which makes a municipality liable for damage caused by the negligence of any member of a volunteer fire company of such municipality while operating fire department equipment in going to, attending, or returning from a fire.

The Court properly gave binding instructions to the jury in favor of defendants and refused plaintiff's motion for judgment n. o. v.

The order appealed from is affirmed.